**CITY OF SOUTH LAKE TAHOE, Roger Capri, as Mayor of the City of South Lake Tahoe, et al., Plaintiffs-Appellants,**

v.

**CALIFORNIA TAHOE REGIONAL PLANNING AGENCY, and Gordon Hooper, et al., Defendants-Appellees.**

No. 77–3191.

United States Court of Appeals, Ninth Circuit.

June 25, 1980.

Sneed, Circuit Judge, filed a concurring opinion.

against the California Tahoe Regional Planning Agency and four of its individual members (collectively CTRPA) for injunctive and declaratory relief. The district court ruled in response to two motions to dismiss brought by CTRPA, which separately raised both standing and abstention issues. In its order of dismissal, the district court relied on the rule that federal courts should, as a matter of discretion, abstain from exercising jurisdiction in cases where the federal constitutional claims that support jurisdiction would be mooted or altered by a state court interpretation of state law. The district court did not reach the question whether the City and councilmembers had standing, although this issue was fully briefed and argued. We do reach the standing question, because we find that standing must be ascertained before a court proceeds to exercise its discretion to abstain. Because we conclude that the City and councilmembers lacked standing, we affirm the dismissal of their action without reaching the abstention questions which would be posed only if jurisdiction were properly established.

J. Thomas Rosch, San Francisco, Cal., argued, McCuthchen, Doyle, Brown & Enersen, San Francisco, Cal., Roy C. Abrams, South Lake Tahoe, Cal., on brief, for plaintiffs-appellants.

E. Robert Wright, Deputy Atty. Gen., Sacramento, Cal., argued, Evelle J. Younger, Sacramento, Cal., on brief, for defendants-appellees.

Before WALLACE and SNEED, Circuit Judges, and SOLOMON,* District Judge.

WALLACE, Circuit Judge:

The City of South Lake Tahoe (City), and its mayor and members of its city council (collectively councilmembers) appeal from the district court's dismissal of their action

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

I

The CTRPA is a political subdivision of the State of California charged with creating and enforcing plans for land and resource development in the Lake Tahoe region. Cal.Gov't Code § 67040 et seq. (West Supp.1979). The City and councilmembers allege that the land use regulations and regional and transportation plans adopted by the CTRPA are unconstitutional in several respects. Specifically, they allege that these plans and regulations so drastically limit residential development of unsubdivided property in the Tahoe basin, including the City, as to take property without just compensation and arbitrarily discriminate between similarly situated property owners in violation of the Fifth and Fourteenth Amendments of the Constitution. The City and councilmembers further allege viola-

tions of the right to travel guarantee inherent in the Constitution, and that the CTRPA's actions conflict with the plans and ordinances of a similar administrative body, the Tahoe Regional Planning Agency—a bistate agency established by Compact between California and Nevada and approved by Congress—in violation of the Supremacy Clause of the Constitution.

The City alleges that enforcement of the CTRPA regulations has a substantial and injurious effect on its municipal finances and claims standing on this basis. The councilmembers claim standing in that they are required by law to enforce the CTRPA's regulations, Cal.Gov't Code §§ 67072, 67102 (West Supp.1979), and yet by voting to enforce these regulations would violate their oaths of office to uphold the U.S. Constitution and expose themselves to civil liability (pursuant to 42 U.S.C. § 1983) for enforcing an unconstitutional law. Violation of any of the CTRPA's ordinances is a misdemeanor, Cal.Gov't Code § 67106 (West Supp. 1979), as is a government official's willful failure to perform his duty, Cal.Gov't Code § 1222 (West 1966).[1] The councilmembers thus allege that failure to enforce the CTRPA's regulations could result in personal criminal liability, plus possible exposure to civil claims for non-enforcement (*e. g.*, mandamus actions authorized by Cal.Code Civ.Pro. § 1084 *et seq.* (West 1970)). They argue that their dilemma—they will be criminally and civilly liable for non-enforcement, and civilly liable for enforcement—generates standing.

## II

 Standing is a necessary element of federal-court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). A threshold question in every federal case is, therefore, whether at least one plaintiff has standing. *Construction Indus. Ass'n of Sonoma County v. City*

of *Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976). Only after a court is satisfied that standing and the other jurisdictional prerequisites are met may it determine, within its discretion, whether to abstain. *See Miller-Davis Co. v. Illinois State Toll Highway Auth.*, 567 F.2d 323, 326 (7th Cir. 1977). Although the district court passed over the standing issue we must consider it because it governs our jurisdiction as well. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969) (opinion of Marshall, J.). We therefore examine whether the City and councilmembers have standing to bring this case.

### A. *The City's Standing*

 It is well established that "[p]olitical subdivisions of a state may not challenge the validity of a state statute under the Fourteenth Amendment." *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir.), *cert. denied*, 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973). *See Williams v. Mayor of Baltimore*, 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933); *Newark v. New Jersey*, 262 U.S. 192, 196, 43 S.Ct. 539, 540, 67 L.Ed. 943 (1923); *Trenton v. New Jersey*, 262 U.S. 182, 188, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923); *Aguayo v. Richardson*, 473 F.2d 1090, 1100–01 (2d Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974). This is true whether the defendant is the state itself or another of the state's political subdivisions. *See New Orleans v. New Orleans Water Works Co.*, 142 U.S. 79, 12 S.Ct. 142, 35 L.Ed. 943 (1891); *Akron Bd. of Educ. v. State Bd. of Educ.*, 490 F.2d 1285, 1297–98 (6th Cir.) (Weick, J., dissenting), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974). Thus, the City may not challenge CTRPA's plans and ordinances on constitutional grounds.[2] Because all of its

---

1. Neglect or violation of official duties may also result in a public official being removed from office. Cal.Penal Code § 661 (West 1970).

2. The City argues that two of our decisions, *City of Davis v. Coleman*, 521 F.2d 661 (9th Cir.

1975), and *Washington Util. & Transp. Comm'n v. FCC*, 513 F.2d 1142 (9th Cir. 1975), undermine the rule stated in, e. g., *Williams v. Mayor of Baltimore, supra.* But both cases are materially distinguishable from the facts in *Williams* and the case before us. The rule stated in

claims are based on the Constitution, the City's challenge was properly dismissed.

### B. *The Councilmembers' Standing*

■ The essence of the standing question "is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. . . . In both dimensions it is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin, supra,* 422 U.S. at 498, 95 S.Ct. at 2205 (citation omitted).

As a constitutional minimum, standing requires that a plaintiff allege

> "such a personal stake in the outcome of a controversy" as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action . . . ." *Linda R. S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). See *Data Processing Service v. Camp,* 397 U.S. 150, 151–154, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184 (1970).

*Id.* at 498–99, 95 S.Ct. at 2205 (footnotes omitted) (emphasis in original). This constitutional minimum is sometimes described

*Williams* disables only *constitutional* challenges brought against *state* defendants. The challenges in both *Davis* and *Washington Utilities* were based on statutory grounds; further, in *Davis* there was at least one federal defendant.

**3.** Article I, § 6, cl. 2 of the U.S. Constitution states:

as the requirement that a plaintiff must allege "injury in fact." *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 218, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

Beyond this "minimum constitutional mandate," *Warth v. Seldin, supra,* 422 U.S. at 499, 95 S.Ct. at 2205, the Supreme Court has developed, as a prudential matter of self-governance, certain "other limits on the class of persons who may invoke the courts' decisional and remedial powers." *Id.* Precisely which categories of plaintiffs are excluded on constitutional grounds, and which on prudential grounds, however, is not always easy to ascertain. For example, in *Schlesinger v. Reservists to Stop the War, supra,* the Court held that a plaintiff class lacked standing, as "citizens," to challenge the Department of Defense's policy of permitting Members of Congress to hold posts in the Armed Forces Reserve on the ground that this policy violated the Incompatibility Clause.[3] The Court said that the Secretary's nonobservance of the Incompatibility Clause "would adversely affect only the generalized interest of all citizens in constitutional governance, and that is an abstract injury." 418 U.S. at 217, 94 S.Ct. at 2930. In addition, the Court explicitly stated that such an "abstract injury" does not satisfy the Article III "cases or controversies" requirement. *Id.* at 227, 94 S.Ct. at 2935. Similarly, in *United States v. Richardson, supra,* 418 U.S. 166, 173–78, 94 S.Ct. 2940, 2944–2947, 41 L.Ed.2d 678 (1974), the Court said that a taxpayer's generalized grievance regarding the CIA's allegedly unconstitutional failure to issue a public Statement of Accounts and Expenditures pursuant to

No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been increased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

Art. I, § 9, cl. 7 of the Constitution [4] did not "clear the threshold [Article III] hurdle of *Baker v. Carr*, 369 U.S. [186,] 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 [(1962)]." 418 U.S. at 178, 94 S.Ct. at 2947.

*Warth v. Seldin, supra,* was decided the following term. There the Court, citing *Schlesinger* and *Richardson,* included in its list of prudential limitations the rule that standing should be denied when the only "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens." 422 U.S. at 499, 95 S.Ct. at 2205. *Accord, Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 80, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978).[5] Since the Court in *Schlesinger* and *Richardson* had explicitly grounded its holdings on Article III, the statements in *Warth* and *Duke Power* that plaintiffs who allege "abstract injuries" are barred as a prudential matter are perplexing. We thus admit to some confusion as to whether the "abstract injury" standing bar is constitutional, or instead prudential.[6]

One further complication adds to the complexity of our review. Until 1968 it was well established that state officials lack a sufficient personal interest in vindicating the Federal Constitution to grant them standing to challenge state statutes on constitutional grounds. *Columbus & Greenville Ry. v. Miller,* 283 U.S. 96, 99–100, 51 S.Ct. 392, 393–394, 75 L.Ed. 861 (1931); *Braxton County Court v. West Virginia,* 208 U.S. 192, 197–98, 28 S.Ct. 275, 276, 52 L.Ed. 450 (1908); *Smith v. Indiana,* 191 U.S. 138, 148–49, 24 S.Ct. 51, 52, 48 L.Ed.2d 125 (1903); P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 182 (2d ed. 1973). For example, in *Smith v. Indiana, supra,* a county auditor sued the state of Indiana in state court, alleging that a state property tax statute violated the Fourteenth Amendment. The Supreme Court stated on appeal from the Indiana Supreme Court's judgment:

> [T]he jurisdiction of this court . . . can only be invoked by a party having a personal interest in the litigation. It fol-

---

4. Art. I, § 9, cl. 7 of the Constitution provides:
 No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time.

5. The Court has made it clear, in *Richardson, Schlesinger,* and *Warth,* that generalized grievances are insufficient to confer *standing* to sue. A second cases or controversy requirement, which is different from but often associated with standing, is that a case be *justiciable.* While standing "focuses on the party seeking to get his complaint before a federal court," justiciability involves "the issues he wishes to have adjudicated." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976), *quoting Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). The question whether the councilmembers have brought us a case or controversy is a matter of standing rather than justiciability. The deficiency in the instant action lies not in the nature of the issues: the issue whether the CTRPA ordinances violate the constitution is of a traditionally justiciable sort. The problem, as we discuss *infra,* is that the councilmembers' interest in these justiciable issues is too abstract; thus, they are the wrong litigants.

6. A third standing limitation, the so-called "nexus" requirement announced in *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), is also a subject of some controversy in the Article III/prudential category debate. *See Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 79 n. 25, 98 S.Ct. 2620, 2633, 57 L.Ed.2d 595 (1978); *United States v. Richardson,* 418 U.S. 166, 181, 94 S.Ct. 2940, 2948, 41 L.Ed.2d 678 (1974) (Powell, J., concurring). In *Flast,* the Court stated that to demonstrate standing a plaintiff must allege a "nexus between the status asserted by the litigant and the claim he presents." *Id.* at 102, 88 S.Ct. at 1953. The "nexus" requirement has not been completely interred, *see Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 227–28, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706 (1974); *United States v. Richardson,* 418 U.S. 166, 171–74, 94 S.Ct. 2940, 2943–45, 41 L.Ed.2d 678, but it has been confined to taxpayers' suits challenging congressional exercise of the taxing and spending power. *Duke Power Co. v. Carolina Environmental Study Group, supra,* 438 U.S. at 79, 98 S.Ct. at 2633; *Schlesinger v. Reservists to Stop the War, supra,* 418 U.S. at 225 n. 15, 94 S.Ct. at 2934. It is thus clearly inapplicable to the instant case.

lows that he cannot sue out a writ of error in behalf of third persons. . . . It is evident that the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their non-performance was equally so. He neither gained nor lost anything by invoking the advice of the Supreme Court as to the proper action he should take. He was testing the constitutionality of the law purely in the interest of third persons, viz., the taxpayers . . .. We think the interest of an appellant in this court should be a personal and not an official interest . . ..

191 U.S. at 148–49, 24 S.Ct. at 52 (citations omitted).

In 1968, however, the Supreme Court, without mention of the *Smith v. Indiana, Braxton,* or *Columbus & Greenville* cases, held in a brief footnote that members of a school board had standing to challenge a state statute which they believed to violate the Federal Constitution. *Board of Educ. v. Allen,* 392 U.S. 236, 241 n. 5, 88 S.Ct. 1923, 1925, 20 L.Ed.2d 1060 (1967). *Allen* was an appeal from a state-court judgment upholding the constitutionality of a statute which required school districts to provide textbooks without charge to school children in both public and private schools. The Court stated:

> Appellees do not challenge the standing of appellants to press their claim in this Court. Appellants have taken an oath to support the United States Constitution. Believing [the challenged statute] to be unconstitutional, they are in the position of having to choose between violating their oath and taking a step—refusal to comply with [the statute]—that would be likely to bring their expulsion from office and also a reduction in state funds for their school districts. There can be no doubt that appellants thus have a "personal stake in the outcome" of this litigation. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

*Id.* The quoted footnote comprised the extent of the Court's discussion of the standing issue.

Were *Allen* the last word from the Supreme Court on standing, we could simply adopt the rationale of the quoted footnote and determine that the councilmembers in the case before us have standing on the basis that they believe that enforcing the CTRPA's ordinances ·would violate their oaths of office. Indeed, this is the approach taken by several of our sister circuits. *See Regents of the Univ. of Minn. v. NCAA,* 560 F.2d 352, 363–64 (8th Cir.), *cert. dismissed,* 434 U.S. 978, 98 S.Ct. 600, 54 L.Ed.2d 472 (1977); *Aguayo v. Richardson, supra,* 473 F.2d at 1100; *City of New York v. Richardson, supra,* 473 F.2d at 933. *Contra, Finch v. Mississippi State Medical Ass'n,* 585 F.2d 765, 773–75 (5th Cir. 1978); *Athanson v. Grasso,* 411 F.Supp. 1153, 1156–61 (D.Conn. 1976) (three-judge court). *See also Akron Bd. of Educ. v. State Bd. of Educ., supra,* 490 F.2d at 1289–91 (granting a school board standing to challenge state districting and transfer policies which increased segregation within school board's district on any of three theories: (1) *jus tertii* representation of parents and students; (2) the board's interest in preventing loss of territory and tax dollars; (3) the board members' desires not to violate their oaths of office and to avoid exposure to civil liability.). But *Allen* was followed by *Schlesinger, Richardson, Warth,* and other cases which significantly tightened standing requirements. *See, e. g., O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Neither the Second nor the Sixth Circuit has had the opportunity to reconsider the impact of *Allen* since *Schlesinger* and *Richardson.* The sum of recent Supreme Court teachings indicates that the *Allen* theory of standing, which was itself an abrupt departure from settled precedent, must be carefully considered. We thus proceed to determine what *Allen* now stands for and to analyze the councilmembers' standing to bring this case.

1. *The* Allen *Theory of Standing (by not enforcing CTRPA regulations).*

Since virtually every public official is subject to severe, and generally criminal, sanctions for non-performance of official duties, and also takes an oath of office which requires him or her to uphold the Constitution, the theory announced in *Allen* would confer standing on any public official who believes that a statute which he or she is charged with enforcing is unconstitutional. Although the councilmembers here urge that they may be exposed to civil liability should they choose to enforce the CTRPA ordinances, *Allen* does not demand anything more than a forced choice between violation of the oath of office and potential expulsion from office. We begin our analysis by considering whether *Allen* can properly be considered as binding Supreme Court precedent. We conclude it cannot and therefore that the councilmembers' desire not to violate their oaths of office does not confer standing. We then discuss whether standing is supplied by the councilmembers' allegations [7] regarding potential exposure to civil liability.

The councilmembers do not seek here to represent the City's interests; if they did their claims would be barred along with the City's. Rather, the councilmembers assert that their personal dilemmas generate standing. The fundamental premise of *Schlesinger* and *Richardson*, however, is that a litigant's standing cannot be based on the "generalized interest of all citizens in constitutional governance." *Schlesinger v. Reservists to Stop the War, supra,* 418 U.S. at 217, 94 S.Ct. at 2930.

It may be argued that a public official charged with the enforcement of an allegedly unconstitutional state law does have a greater and more specific stake in the law's validity than an ordinary citizen. For example, the councilmembers here must vote whether to enforce the CTRPA ordinances. While the ordinary citizen may remain passive and silent until he or she is actually victimized by an unconstitutional law, officials charged with a law's enforcement must, on pain of criminal liability, actively execute the law's commands. It is also true that the class of public officials who might sue on an *Allen* theory is, relatively speaking, smaller than the class of all citizens. Thus, although each broadening of the courts' focus brings charges of usurpation of power by the judiciary and "government by injunction," 418 U.S. at 222, 94 S.Ct. at 2932, standing for these public officials threatens our legitimacy less than would general citizen standing.

But the source of the public official's complaint, like that of the ordinary citizens in *Schlesinger* and *Richardson*, is just abstract outrage at the enactment of an unconstitutional law. Apart from the highly speculative potential exposure to civil liability which we discuss *infra*, the councilmembers will lose nothing by enforcing the CTRPA's ordinances save an abstract measure of constitutional principle. No consequences, save those of conscience self-imposed by the councilmembers' personal beliefs, flow from the violation of the oath in performance of a statutory duty. *Compare Craig v. Boren,* 429 U.S. 190, 194, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976) (vendor who was obliged by challenged statute to heed statutory discrimination against selling beer to males under 21 had standing because of her direct economic injury through the constriction of her buyers' market); *Barrows v. Jackson,* 346 U.S. 249, 255–56, 73 S.Ct. 1031, 1034–35, 97 L.Ed. 1586 (1953) (vendor would suffer "direct, pocketbook injury").

Thus, the councilmembers have available a course of action which subjects them to no concrete adverse consequences—they can enforce the CTRPA ordinances. That an alternative course exists—not enforcing the statute—which might result in criminal liability does not transform the councilmembers' abstract disagreement with the legis-

---

**7.** The facts which demonstrate a plaintiff's standing must be alleged in the complaint. *See Jenkins v. McKeithen,* 395 U.S. 411, 422, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969) (opinion of Marshall, J.). In considering these allegations "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206.

lature over land use into judicially cognizable concrete injury. The criminal liability might support standing to challenge the relevant criminal statutes, perhaps on the theory that public officials should not be required to act contrary to their constitutional beliefs. But the councilmembers have not shown any concrete personal injury—criminal liability or otherwise—that results from the operation of the challenged CTRPA ordinances. The lesson of *Schlesinger* and *Richardson* is that constitutional principle divorced from concrete injury may suffice to generate a spirited legislative or public debate, but will not support a federal case.

This is not to denigrate constitutional principle, nor to urge upon public officials the violation of their consciences. But the difficulty with abstract constitutional grievances is that they lack the specificity and adversarial coloration that transmute vague notions of constitutional principle into " 'a form historically viewed as capable of judicial resolution.' " *Schlesinger v. Reservists to Stop the War, supra,* 418 U.S. at 218, 94 S.Ct. at 2930 (quoting *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968)). *See also id.* at 220–22, 94 S.Ct. at 2931–32. We do not have official ombudsmen in this country, although we do have specially elected or appointed attorneys general. To confer standing on public officials because they wish not to enforce a statute due to private constitutional predilections, or because their decision not to enforce the statute may result in criminal liability, would convert all officials charged with executing statutes into potential litigants, or attorneys general, as to laws within their charge. *Schlesinger* and *Richardson* bar the courthouse door until the victim of a law's unconstitutional enforcement—in this case most clearly the landowners—chooses to knock. We hold, therefore, that the councilmembers' interest here is "official" rather than "personal," and therefore under the traditional rule of *Smith v. Indiana, supra,* 191 U.S. 138, 24 S.Ct. 51, 48 L.Ed. 125 and the more recent prohibitions expressed in *Schlesinger* and *Richardson* of standing to assert abstract injuries, the councilmembers' claim to standing is deficient.

2. *Councilmembers' Exposure to Civil Liability (by enforcing CTRPA regulations).*

Nor does the councilmembers' alleged exposure to civil liability provide a sufficiently concrete injury. In *Warth v. Seldin, supra,* the Court stated that "The standing question . . . bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention . . . ." 422 U.S. at 499 n. 10, 95 S.Ct. at 2205.

It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged statute or official conduct. *Massachusetts v. Mellon,* 262 U.S. 447, 488 [, 43 S.Ct. 597, 601, 67 L.Ed. 1078] (1923). The injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *Golden v. Zwickler,* 394 U.S. 103, 109–110, [89 S.Ct. 956, 960, 22 L.Ed.2d 113] (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, [61 S.Ct. 510, 512, 85 L.Ed. 826] (1941); *United Public Workers v. Mitchell,* 330 U.S. 75, 89–91 [, 67 S.Ct. 556, 564–565, 91 L.Ed. 754] (1947).

*O'Shea v. Littleton, supra,* 414 U.S. at 494, 94 S.Ct. at 675.

The exposure to civil liability which the councilmembers contend would be caused by their enforcement of the CTRPA ordinances is wholly speculative. In *O'Shea,* the plaintiff class claimed that a judge and county magistrate were systematically violating black citizens' civil rights by discriminatory sentencing, setting of bond, and requiring payment for jury trials. The Court declined to grant an injunction against such activities, emphasizing that only "*if* [the plaintiffs] proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before [the judge and magistrate]," 414 U.S. at 497, 94 S.Ct. at 676 (emphasis in original), would the plaintiffs' injury materialize. The multiple contingencies precluded standing.

Similar multiple contingencies are present here. No lawsuit is currently threatened. The facts of this case are unlike *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), in which the Court granted standing to seek declaratory relief to a plaintiff who was threatened on two occasions with criminal prosecution if he persisted in passing out handbills at a shopping center. In *Steffel* the plaintiff's companion at each of three previous efforts to pass out handbills at the shopping center had already been arrested and prosecuted. In the instant case there is no immediate threat of suit nor reason to believe suit is inevitable. Moreover, the exposure in *Steffel* was to a criminal statute; enforcement of the statute here would expose councilmembers only to potential civil liability.

Further, it is by no means clear that an official who personally believes a statute to be unconstitutional, but enforces it anyway, is civilly liable solely on the strength of his subjective concerns. Under California law, public officials who act under the apparent authority of an enactment that is unconstitutional are not civilly liable if they acted "in good faith, without malice." Cal.Gov't Code § 820.6 (West 1966). Similarly, a public official is not liable under 42 U.S.C. § 1983 for actions taken under the authority of unconstitutional statutes unless he " 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [the plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to [the plaintiff].' " *O'Connor v. Donaldson*, 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975) (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214

(1975)). *See also Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974). Moreover, an official "has no duty to anticipate unforeseeable constitutional developments." *O'Connor v. Donaldson, supra*, 422 U.S. at 577, 95 S.Ct. at 2494; *see Wood v. Strickland, supra*, 420 U.S. at 322, 95 S.Ct. at 1000.

This case, in which no California or section 1983 claim is present, would be a particularly poor record upon which to decide the difficult question whether an official who believes a statute to be unconstitutional can, for immunity purposes, be deemed nonetheless to act in good faith. The ripeness doctrine, particularly as it affects the standing question, *see O'Shea v. Littleton, supra*, 414 U.S. at 494, 94 S.Ct. at 675, is designed primarily to avoid such conjecture. It is sufficient to point out the numerous contingencies which might prevent the councilmembers from ever being actually threatened with civil liability. We decide, therefore, that the threat of civil liability is too attenuated and conjectural to supply the councilmembers with a basis for standing.[8]

## IV

Neither the City's nor the councilmembers' claims supply a sufficient basis for standing to bring this action. Whether the abstract, generalized nature of the councilmembers' claims is considered a constitutional, or instead a prudential disability, their claims do not support federal-court jurisdiction. The action should therefore have been dismissed for lack of standing.

AFFIRMED.

SNEED, Circuit Judge, (concurring):

I concur in Judge Wallace's opinion subject to two observations. It is clear to me

---

8. The City and the councilmembers also argue that they are closely identified with and entitled to represent the interests of landowners and other persons not parties to this action whose constitutional rights are violated by the CTRPA's regulations. Standing to raise constitutional rights of third parties is available only where the litigant's own injury is "concrete and particularized." *Duke Power Co. v. Carolina*

*Environmental Study Group, supra*, 438 U.S. at 81, 98 S.Ct. at 2634. Because the councilmembers' personal grievance is "abstract," the councilmembers' own injury fails this test. The City is absolutely barred by the rule in *Williams v. Mayor of Baltimore, supra*, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015. We therefore need not consider the litigants' third-party contentions.

that, as Judge Wallace's opinion holds, the city council members have not brought themselves within the strict letter of the *Allen* footnote 5. No palpable threat of expulsion is alleged and I would afford *Allen* no larger scope in the operation of the law of standing. Second, standing should not turn on whether a public official might lack immunity in a civil proceeding under 42 U.S.C. § 1983. If *Allen* is to be extended to instances in which one horn of the dilemma is civil liability as a result of performance of the required duty, the probability of such liability should be quite high. Avoidance of either horn of the dilemma is always possible by a resignation with honor.