**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANDREW PEYTON THOMAS,
Maricopa County Attorney;
LORENZO ARENIVAZ; TIMOTHY
WILLIS; BARBARA WILLIS,
          *Plaintiffs-Appellants,*

v.

BARBARA MUNDELL, Judge of the
Superior Court of Arizona; CAREY
SNYDER HYATT, Judge of the
Superior Court of Arizona; AIMEE
ANDERSON, Commissioner,
Superior Court of Arizona;
RICHARD NOTHWEHR,
Commissioner, Superior Court of
Arizona; STEVEN LYNCH,
Commissioner, Superior Court of
Arizona; JAMES T. BLOMO,
Commissioner, Superior Court of
Arizona,
          *Defendants-Appellees.*

No. 07-15388

D.C. No.
CV-06-00598-PHX-
EHC

OPINION

Appeal from the United States District Court
for the District of Arizona
Earl H. Carroll, District Judge, Presiding

Argued and Submitted
October 23, 2008—San Francisco, California

Filed July 15, 2009

Before: J. Clifford Wallace, Sidney R. Thomas and
Susan P. Graber, Circuit Judges.

8947

Opinion by Judge Wallace

---

**COUNSEL**

Michael A. Carvin, Jones Day, Washington, D.C., for the plaintiffs-appellants.

Scot L. Claus, Mariscal, Weeks, McIntyre & Friedlander, P.A., Phoenix, Arizona, for the defendants-appellees.

---

**OPINION**

WALLACE, Senior Circuit Judge:

Andrew Peyton Thomas, the County Attorney for Maricopa County, Arizona, in his official capacity (Thomas), along with Lorenzo Arenivaz, Timothy Willis, and Barbara Willis (individual plaintiffs), sued several judges and commissioners of the Arizona Superior Court for injunctive and declaratory relief. They allege that certain post-sentencing probation programs adopted and supervised by the superior court violate their federal constitutional and statutory rights. The district court dismissed their claims for lack of standing. Thomas and the individual plaintiffs timely appealed from the district court's dismissal. Because we agree that Thomas and the individual plaintiffs lack standing to challenge the probation programs at issue, we affirm the district court's dismissal.

**I.**

In 1998, the Maricopa County Adult Probation Department instituted a separate and specialized probation program for

individuals convicted of aggravated driving-under-the-influence (DUI) offenses. This program was funded through a grant from the National Traffic Safety Administration, and is commonly known as the "DUI court." Eligible persons were enrolled in the DUI court after having completed their respective sentences. The DUI court differs from traditional criminal probation in several respects. For example, probationers in the DUI court engage in more frequent contact with their assigned probation officers, participate in substance abuse treatment courses and counseling, and take part in peer support groups and observation. Probationers are also required to attend monthly status hearings before a superior court judge, who tracks and monitors their progress.

Subsequently, Maricopa County instituted separate DUI courts for Spanish-speaking and for Native American probationers. These programs were meant in part to address observed deficiencies in the treatment and rehabilitation services rendered to these groups of probationers in the standard DUI court program. The "Spanish-speaking DUI court" was established in December 2002, and the "Native American DUI court" followed in 2003 (collectively, separate DUI courts). The separate DUI courts were funded through a grant from the Substance Abuse and Mental Health Services Administration of the United States Department of Health and Human Services.

Thomas and the individual plaintiffs allege that the separate DUI courts "segregate targeted recipients and treat them differently than the 'regular' DUI court." Specifically, the amended complaint alleges that proceedings in the Spanish-speaking DUI court are conducted in Spanish and are presided over exclusively by defendant Judge Barbara Mundell. Thomas and the individual plaintiffs allege that probationers in the Spanish-speaking DUI court receive more positive reinforcement and fewer or lighter punishments as compared to probationers in the "regular" DUI court. Also, the headphone translation system employed in the Spanish-speaking DUI

court is allegedly outdated and inadequate, preventing members of the public and the press from receiving "translation in a timely and appropriate manner."

With respect to the Native American DUI court, the amended complaint alleges that probationers here are generally required to appear on the same day. Probationers in the Native American DUI court also allegedly participate in "cultural programs, specially designed for them, such as being sent to sweat lodges and participating in talking circles." Administrators of the DUI court program also allegedly treat participants in the Native American DUI court "as a separate group" for grant reporting purposes.

Thomas filed the original complaint on February 28, 2006. An amended complaint was filed on March 13, 2006, adding the individual plaintiffs to this action. As described above, Thomas is the County Attorney for Maricopa County. Arenivaz is a resident of Maricopa County, and a victim of a DUI crime perpetrated by a probationer who participated in the "regular" DUI court. The Willises are residents of Maricopa County, and victims of a DUI crime committed by a probationer who participated in the Spanish-speaking DUI court.

Thomas and the individual plaintiffs assert claims under the First Amendment, the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. They seek an order declaring the separate DUI courts unconstitutional, and enjoining the defendants from operating these probation programs. The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), asserting, among other claims, that the plaintiffs lack standing to bring this action in federal court. The district court granted the defendants' motion to dismiss, ruling that the plaintiffs have failed to allege sufficient injury in fact to establish their standing to bring suit under Article III. This appeal followed.

## II.

Standing is a necessary element of federal-court jurisdiction under Article III of the Constitution. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "A threshold question in every federal case is, therefore, whether at least one plaintiff has standing." *City of South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980), citing *Constr. Indus. Ass'n of Sonoma County v. City of Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975). We review the district court's determination on that issue de novo. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1148 (9th Cir. 2000). Because the standing issue was raised before the district court in a motion to dismiss, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501.

**[1]** To have standing to sue in federal court, a plaintiff must allege " 'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id*. at 498-99, quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962). Therefore, "the plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations, internal quotation marks, and footnote omitted). A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1. Thus, a plaintiff normally does not have standing where the only "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens." *Warth*, 422 U.S. at 499, citing *United States v. Richardson*, 418 U.S. 166, 174-80 (1974).

## A.

We first hold that Thomas lacks standing to bring this suit under our well-settled precedent *South Lake Tahoe*. In that

case, the mayor and city councilmembers of the City of South Lake Tahoe (collectively, councilmembers) sought to enjoin the enforcement of certain land use regulations and regional and transportation plans adopted by the California Tahoe Regional Planning Agency (Agency), a political subdivision of the State of California. 625 F.2d at 232-33. They alleged that the regulations and plans violated various federal constitutional guarantees. *Id.* The councilmembers argued that they had standing to challenge these regulations because "they are required by law to enforce the [Agency's] regulations, and yet by voting to enforce these [purportedly unconstitutional] regulations[, they] would violate their oaths of office to uphold the U.S. Constitution." *Id.* at 233 (internal citation omitted).

In rejecting the councilmembers' standing arguments, we concluded that the source of the councilmembers' complaint was "just abstract outrage at the enactment of an unconstitutional law. Apart from the highly speculative potential exposure to civil liability [for enforcing an unconstitutional regulation] . . . , the councilmembers will lose nothing by enforcing the [Agency's] ordinances save an abstract measure of constitutional principle." *Id.* at 237. We reasoned that to confer standing on the councilmembers based on their "abstract disagreement with the legislature over land use" would conflict with the fundamental premise of federal standing doctrine — that a litigant's standing cannot be based on the " 'generalized interest of all citizens in constitutional governance.' " *Id.* at 237-38, quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974). Thus, we held that the councilmembers' interest in that case was " 'official' rather than 'personal,' " rendering their claim to standing deficient. *Id.* at 238.

The distinction we drew between "official" and "personal" interests derives from the Supreme Court's decision in *Smith v. Indiana*, 191 U.S. 138 (1903). In that case, the Court held that a county tax auditor did not have standing to challenge

the constitutionality of a state property tax statute in federal court. *Id.* at 149-50. In so holding, the Court reasoned:

> It is evident that the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their nonperformance was equally so. He neither gained nor lost anything by invoking the advice of the [state] supreme court as to the proper action he should take. He was testing the constitutionality of the law purely in the interest of third persons, *viz.*, the taxpayers . . . . We think the interest of an appellant in this court should be a personal, and not an official, interest . . . .

*Id.* at 149 (internal citation omitted). The Court accordingly dismissed the tax auditor's challenge because the auditor "did not have the requisite interest to maintain [his] appeal." *Id.* at 150.

**[2]** Under *South Lake Tahoe* and *Smith*, Thomas does not have standing to challenge the constitutionality of the separate DUI courts because his interest in this case is official, and not personal. The amended complaint alleges that, "[t]hrough his representation of the people of Maricopa County before state DUI courts, [Thomas] and his office are compelled to participate in unconstitutional separate DUI courts for Spanish speakers and for Native Americans . . . in violation of the Constitution and laws of the United States." *South Lake Tahoe* teaches, however, that a public official's "personal dilemma" in performing official duties that he perceives to be unconstitutional does not generate standing. 625 F.2d at 237. Like the councilmembers in that case, Thomas' "abstract outrage" at his obligation to participate in purportedly unconstitutional programs is based on nothing more than the " 'generalized interest of all citizens in constitutional governance.' " *Id.*, quoting *Schlesinger*, 418 U.S. at 217. Moreover,

the performance of his duties as County Attorney in the separate DUI courts is of no personal benefit to him. *See Smith*, 191 U.S. at 149. Thomas loses nothing by his participation in these separate DUI courts "save an abstract measure of constitutional principle." *South Lake Tahoe*, 625 F.2d at 237. He therefore lacks standing to bring this suit.

Thomas argues that his injury is more direct and particularized than the councilmembers' injury in *South Lake Tahoe* because here he is "subjected . . . to an unconstitutional and illegal judicial process," whereas the councilmembers were merely "implementing or enforcing" purportedly unconstitutional regulations. But the councilmembers could have similarly characterized their injury as being subject to the purportedly unconstitutional regulations they were obliged to enforce. The crux of their claimed injury, however, lay in their "abstract outrage at the enactment of an unconstitutional law." *Id.* Likewise, Thomas' claimed injury is based upon his "abstract outrage" at the operation of a state program he perceives to be unconstitutional. Thus, *South Lake Tahoe* is directly on point.

Thomas attempts to circumvent the clear import of *South Lake Tahoe* by alleging that the operation of the separate DUI courts "disadvantages him and his office in fulfilling prosecutorial functions." But any "disadvantage" suffered by Thomas (and his office) in the separate DUI courts is institutional, not personal. In *Raines v. Byrd*, 521 U.S. 811, 829-30 (1997), the Supreme Court held that members of Congress did not have standing to challenge the constitutionality of the Line Item Veto Act because they did not have a sufficient "personal stake" in the dispute. The congresspersons alleged that the Line Item Veto Act caused an unconstitutional diminution of Congress' power relative to the Executive Branch, thereby inflicting upon each congressperson a judicially cognizable injury. *Id.* at 816. The Court rejected this argument, concluding that the alleged injury "is based on a loss of political power, not loss of any private right." *Id.* at 821. "The claimed

injury thus runs (in a sense) with the Member's seat, a seat which the Member holds (it may quite arguably be said) as trustee for his constituents, not as a prerogative of personal power." *Id.*

[3] Similarly, Thomas' claimed injury in being "disadvantaged" by the separate DUI courts is based on the loss of his institutional power as County Attorney, not the loss of any private right. Thomas is not personally affected by the various ways the separate DUI courts allegedly hamper the execution of his prosecutorial duties. As with the congresspersons' allegations of injury in *Raines*, the alleged disadvantages imposed on the office of County Attorney by the operation of the separate DUI courts run with the office, and cannot be considered injuries personal to Thomas. *Id.* Thus, Thomas' allegations of disadvantage to the office of County Attorney are insufficient to plead successfully standing.

Thomas responds that even if the disadvantages suffered by his office cannot be attributed to him personally, he has alleged the requisite injury in fact because the "racially segregated" DUI court imposes on him a direct and personal injury under *Georgia v. McCollum*, 505 U.S. 42 (1992). In *McCollum*, the Supreme Court held that the State of Georgia had third-party standing to raise the equal protection rights of jurors improperly excluded from a jury by a criminal defendant's discriminatory use of peremptory challenges. *Id.* at 55-56. In so ruling, the Court held that a state suffers a cognizable injury for standing purposes because "racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process,' and places the fairness of a criminal proceeding in doubt." *Id.* at 56, quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

Thomas argues that as Maricopa County Attorney he acts "on behalf of the State," and therefore has standing as a state agent to challenge the separate DUI courts as racially discriminatory. However, even assuming that Thomas can properly

be considered a representative of the State of Arizona with respect to his claims (itself a dubious proposition given the Arizona Attorney General's silence in this action), *McCollum* does not confer upon him standing to sue. *McCollum*'s holding that the state had a cognizable injury for third-party standing purposes was guided by the fact that the state was a *party* in the specific criminal prosecution at issue. *See id.* at 55-56. Here, Thomas does not allege that he or the State is a party in proceedings before the separate DUI courts. Although the amended complaint alleges that Thomas represents "the people of Maricopa County before state DUI courts," and that he and his office are "compelled to participate" in the probation programs, these allegations are too vague to plead successfully his standing to sue under *McCollum. See Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) (per curiam) ("Although we must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss").

**[4]** Thomas' powers as County Attorney are strictly limited by the Arizona Constitution, and he points to no constitutional provision or other legal authority indicating that he or his office is a party to the proceedings in the separate DUI courts. The Arizona Constitution provides that "[t]he duties, powers, and qualifications of [the County Attorney] shall be as prescribed by law." Ariz. Const. art. 12, § 4. The legislature in turn has prescribed that the County Attorney shall "[a]ttend the superior and other courts within the county and conduct, on behalf of the state, all prosecutions for public offenses." Ariz. Rev. Stat. § 11-532(A)(1). As the amended complaint alleges, however, the DUI courts are "post-sentencing" probation programs, conducted for "defendants convicted of DUI" — they are not "prosecutions for public offenses." Therefore, Thomas as County Attorney, representing either the County or the State, cannot be considered a party to these proceedings; he thus does not have standing under *McCollum*.

**[5]** Finally, to the extent that Thomas argues that he has third-party standing to assert the rights of the various proba-

tioners required to attend the separate DUI courts, we reject his contention. To establish third-party standing, a plaintiff must allege that he has suffered an "injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute." *Powers*, 499 U.S. at 411 (internal quotation marks omitted). As described above, Thomas' interest in this dispute is purely official, so he lacks the requisite injury in fact to assume third-party standing on behalf of the separate DUI court probationers.

**B.**

The individual plaintiffs similarly lack standing to challenge the separate DUI courts. They allege that they are victims of DUI crimes perpetrated by certain probationers who participated in either the "regular" DUI court or the Spanish-speaking DUI court. As such, they have been allegedly "disadvantaged by unequal access to judicial services and by having the case of the defendant who harmed them adjudicated in a racially separate DUI court system." These allegations describe injuries too generalized and impersonal to generate standing. *See Lujan*, 504 U.S. at 560 (requiring that a plaintiff assert the intrusion of a legally protected interest that is "concrete" and "particularized").

[6] In *United States v. Mindel*, 80 F.3d 394 (9th Cir. 1996), we held that crime victims did not have standing to challenge a district court order rescinding criminal restitution payments because the restitution order "serves a penal rather than a compensatory purpose," and so its rescission did not cause the crime victims an injury in fact. *Id.* at 397, citing *United States v. Johnson*, 983 F.2d 216, 217 (11th Cir. 1993). In this case, the DUI court at issue serves a similarly penal, rather than compensatory, purpose. The amended complaint alleges that the DUI court "focuses on defendants convicted of aggravated DUIs," and may include "participation in substance abuse treatment programs, attendance at support group meetings such as Alcoholics Anonymous, observing a Victim Impact

Panel, reporting to the Probation Department, seeking or securing employment, and pledges of sobriety." The DUI courts thus mainly operate to *penalize* DUI probationers rather than *compensate* victims. Therefore, the fact that the Superior Court altered these probation programs to some degree by incorporating the separate DUI courts does not cause any concrete injury to the individual plaintiffs as victims of DUI probationers.

**[7]** The individual plaintiffs respond that the separate DUI courts deprive them, as crime victims, of their "rights to justice and due process" as protected by the Victims' Bill of Rights in the Arizona Constitution. However, each of the individual plaintiffs has already seen the perpetrator of their respective crimes tried and convicted for the charged DUI offense in the Superior Court. The individual plaintiffs cite no authority for the proposition that their rights to "justice and due process" also encompass an interest in the administration and operation of non-compensatory post-conviction probation programs such as the separate DUI courts. *See Kelly v. Robinson*, 479 U.S. 36, 52 (1986) (observing that the "criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole").

## III.

**[8]** We hold that neither Thomas nor the individual plaintiffs have successfully pled their standing to challenge the constitutionality of the separate DUI courts. Although we do not take lightly allegations of racial discrimination in the judicial system, the doctrine of standing is of equal consequence. This constitutional prerogative "is founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Warth*, 422 U.S. at 498. And as we held nearly three decades ago, the standing requirements of Article III "bar the courthouse door until the victim of a law's unconstitutional enforcement . . . chooses to knock." *South Lake Tahoe*, 625 F.2d at 238. In this case, Thomas and the individ-

ual plaintiffs have not alleged sufficient interest in this dispute to merit their entry into federal court. We therefore affirm the district court's dismissal of their claims for lack of standing.

**AFFIRMED.**