**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARIZONA STUDENTS' ASSOCIATION, *Plaintiff-Appellant*, v. ARIZONA BOARD OF REGENTS, *Defendant-Appellee.* | No. 13-16639 D.C. No. 2:13-cv-00306-JWS OPINION |

Appeal from the United States District Court
for the District of Arizona
John W. Sedwick, District Judge, Presiding

Argued and Submitted November 17, 2015
San Francisco, California

Filed June 1, 2016

Before: John T. Noonan, Kim McLane Wardlaw,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Civil Rights

The panel affirmed in part and reversed in part the dismissal of a complaint brought pursuant to 42 U.S.C. § 1983 by the Arizona Students' Association against the Arizona Board of Regents alleging First Amendment retaliation in connection with the Regents' decision to suspend its collection and remittance of the Arizona Students' Association fees and then to modify its fee collection policies.

The panel agreed with the district court that the Eleventh Amendment barred any claim by the Students' Association for retrospective relief, including money damages, against the Board of Regents. The panel held, however, that the Students' Association's claim for prospective injunctive relief and related declaratory relief was not barred by sovereign immunity, provided such relief was sought against individual members of the Board. The panel held that the district court abused its discretion when it failed to grant the Students' Association leave to amend its complaint to conform with the requirements of *Ex Parte Young*, 209 U.S. 123 (1908). The panel directed the district court, on remand, to afford the Students' Association a reasonable opportunity to file an amended complaint.

The panel held that the Students' Association adequately alleged that it had engaged in the kinds of core political

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

speech that trigger the First Amendment's highest levels of protection. The panel stated that the Board of Regents had no affirmative obligation to collect or remit the Students' Association fees, but having done so for fifteen years at no cost, the Board of Regents could not deprive the Students' Association of the benefit of its fee collection and remittance services in retaliation for the Students' Association's exercise of its First Amendment rights. The panel held that the collection and remittance of funds is a valuable government benefit, and a change in policy undertaken for retaliatory purposes that results in the deprivation of those funds implicates the First Amendment.

## COUNSEL

Stephen Montoya (argued), Montoya Jiminez, P.A., Phoenix, Arizona, for Plaintiff-Appellant.

Joseph Andrew Kanefield (argued) and Craig Carson Hoffman, Ballard Spahr LLP, Phoenix, Arizona, for Defendant-Appellee.

**OPINION**

PAEZ, Circuit Judge:

The Arizona Students' Association ("ASA") brought this First Amendment retaliation case against the Arizona Board of Regents ("ABOR" or "the Board"). The district court dismissed the ASA's complaint without leave to amend, concluding that the ASA's claims were barred by sovereign immunity, and in the alternative failed to state a claim upon which relief could be granted. Reviewing de novo, we conclude that the complaint states a plausible claim for First Amendment retaliation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *O'Brien v. Welty*, No. 13-16279, 2016 WL 1382240, at *11 (9th Cir. Apr. 7, 2016). We further conclude that the district court erred when it declined to grant the ASA leave to amend its complaint to comply with the requirements set forth in *Ex Parte Young*, 209 U.S. 123 (1908). We therefore reverse and remand for further proceedings consistent with this opinion.

**I.**

The ASA is an Arizona non-profit corporation that represents students enrolled at the state's three public universities. Its primary purpose is to advocate for the affordability, accessibility, and quality of public higher education in Arizona, and the ASA frequently engages in political activity related to financial aid, public funding of higher education, and tuition policy.

From 1974 through 1998, ABOR, a state board whose members are appointed by the Governor and confirmed by the Arizona State Senate, directly funded the ASA. In 1998,

students at Arizona's three public universities voted to impose a semesterly one-dollar fee per student to fund the ASA. In 2008, students voted to increase the fee to two dollars per semester.[1] From 1998 through 2013, ABOR collected the student fee on the ASA's behalf and remitted proceeds to the ASA at no cost.

Throughout 2012, the ASA advocated for the passage of Proposition 204, a state ballot initiative that would increase funding for public education. In preparation for the November 2012 election, the ASA co-drafted the text of the initiative; collected over 20,000 petition signatures to qualify the initiative for the election; co-drafted the ballot argument that appeared in the state's official Publicity Pamphlet (voter's guide); participated in media events in support of the initiative; hosted information sessions and distributed literature explaining the initiative; engaged in social media campaigning; phone-banked and canvassed neighborhoods to encourage voter turnout in support of the initiative; and contributed $120,000 of its student-fee income to the Yes on Proposition 204 campaign. All of the ASA's activities complied with campaign disclosure and reporting laws and regulations.

Janice Brewer, the former Governor of Arizona and an ex-officio member of ABOR, opposed Proposition 204. Additionally, during the campaign and after the election, several Regents criticized the ASA for supporting Proposition 204. Within weeks of the November election, ABOR called

---

[1] Although ABOR collected the ASA fee in conjunction with the collection of tuition payments, the ASA fee was not mandatory, and students could request a fee refund consistent with the ASA's published procedures.

a special meeting to discuss the ASA fee. At the special meeting, ABOR voted to suspend collection of the ASA fee, and it withheld the fee income it already had collected for the Spring 2013 semester. Several Regents commented that the suspension was "political" in nature and was undertaken in response to the ASA's Proposition 204 advocacy. ABOR held a second special meeting in January 2013, in which it proposed changing the Board's policies to collect the ASA fee only from students who "opted-in" and to require that the ASA reimburse the universities for the administrative costs of collecting the ASA fee. On February 7, 2013, ABOR adopted the policy revisions proposed at the January 2013 meeting. The ASA alleged that it lost "its only source of income" when ABOR suspended fee collection and then modified its policies to an opt-in model, and it argued to this court that since November 26, 2012, the Board has not remitted to the ASA the fees ABOR collected for Spring 2013.

The ASA filed suit pursuant to 42 U.S.C. § 1983, alleging that ABOR had modified its policies to retaliate against the ASA's exercise of its First Amendment free speech rights.[2] The ASA alleged that ABOR's retaliatory policy change caused it harm by chilling students' political speech and depriving the ASA of its income. ABOR moved to dismiss the complaint on sovereign immunity grounds and, in the alternative, for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6). In opposing

---

[2] After the ASA filed its lawsuit, the Arizona Legislature enacted Arizona Revised Statutes section 15-1626.01, which proscribes the transfer of student fees or the use of "any university student billing process to collect monies on behalf of an organization not under the jurisdiction of the Arizona board of regents and not recognized as a university student organization." Because that statute does not affect our analysis, we do not address it.

the motion, the ASA emphasized that it had pleaded a claim of First Amendment retaliation, and it argued that in addition to chilling the ASA's ability to exercise its free speech rights, ABOR had harmed the ASA by depriving it of a valuable government benefit.  The district court granted ABOR's motion with prejudice, concluding that sovereign immunity barred all of the ASA's claims and, in the alternative, that the ASA had failed to allege a plausible claim for relief. Additionally, the district court denied the ASA's request for leave to amend to name individual regents, concluding that such amendment would be futile.

## II.

We review de novo a dismissal on the basis of sovereign immunity or for failure to state a claim upon which relief can be granted.  *O'Brien*, 2016 WL 1382240, at *7; *Kahle v. Gonzales*, 487 F.3d 697, 699 (9th Cir. 2007).  We limit our review to the complaint, accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

## III.

The district court concluded that sovereign immunity barred the ASA from suing ABOR, and accordingly, the court determined that it lacked subject matter jurisdiction over the ASA's complaint.  U.S. Const., amend XI; Fed. R. Civ. P. 12(b)(1).  Alternatively, the district court concluded that if sovereign immunity did not bar the ASA's lawsuit, then the

ASA's complaint failed to state a claim upon which relief could be granted under Rule 12(b)(6).  We first analyze the district court's sovereign immunity determination, and we conclude that although the district court did not err in determining that ABOR is an arm, division, or instrumentality of the State of Arizona entitled to sovereign immunity, it erred when it failed to apply the *Young* doctrine to the ASA's claims.

**A.**

Sovereign immunity provides that an individual may not sue a state, a division of a state, or an instrumentality/arm of a state without the state's consent.  *Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).  As a result, the Eleventh Amendment bars individuals from bringing lawsuits against a state for money damages or other retrospective relief, *Frew*, 540 U.S. at 437, so long as the "state is the real, substantial party in interest," *Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997) (citation omitted).

We have previously held that ABOR is an arm of the State of Arizona for Eleventh Amendment purposes.  *See Rutledge v. Ariz. Bd. of Regents*, 660 F.2d 1345, 1349 (9th Cir. 1981), *abrogated on other grounds by Haygood v. Younger*, 769 F.2d 1350, 1356 (9th Cir. 1985) (en banc); *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir. 1981) ("[W]e conclude that the [Arizona] Board of Regents is protected by the eleventh amendment.").  In our prior analyses, we have also held that the State of Arizona treats ABOR as a division of the State under Arizona law.  *See*

*Rutledge*, 660 F.2d at 1349 (citing *Ariz. Bd. of Regents v. Ariz. York Refrigeration Co.*, 115 Ariz. 338 (1977)).

We are bound by the holdings of prior three-judge panels so long as those holdings and their reasoning have not been superseded by later or intervening authority. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1080 (9th Cir. 2015); *Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015); *Miller v. Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc). We have not revisited or abrogated our determination that ABOR is a division of the State of Arizona entitled to sovereign immunity. Accordingly, the Eleventh Amendment bars any claim by the ASA for retrospective relief, including money damages, against ABOR. As discussed below, however, the ASA's claim for prospective injunctive relief and related declaratory relief is not barred by sovereign immunity, provided such relief is sought against individual members of the Board.

## B.

Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law. *Ex Parte Young*, 209 U.S. 123, 149–56 (1908); *see also Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000). The *Young* doctrine allows individuals to pursue claims against a state for prospective equitable relief, including any measures ancillary to that relief. *Green v. Mansour*, 474 U.S. 64, 68–71 (1985); *Hutto v. Finney*, 437 U.S. 678, 689–92 (1978) (allowing the recovery of attorney's fees and costs). To bring such a claim,

the plaintiff must identify a practice, policy, or procedure that animates the constitutional violation at issue. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monnell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978).

The district court erred when it failed to apply *Young* to the ASA's claim of ongoing First Amendment retaliation, and its request for prospective injunctive and declaratory relief. As explained below, the ASA properly alleged a First Amendment retaliation claim, and it identified ABOR's changes to its fee-collection policies as the sources of ongoing violations of federal law within the meaning of *Young* and its progeny. The ASA's error was in naming ABOR as the defendant instead of naming either the President, Chair, or other members of ABOR in their official capacities.[3]

The district court failed to distinguish between the ASA's request for prospective equitable relief and its request for money damages. As noted above, although the Eleventh Amendment bars the ASA's requests for money damages and other retrospective relief, it does not preclude the ASA's requests for prospective injunctive and declaratory relief. *Edelman*, 415 U.S. at 662–63. Thus, the district court erred in dismissing the ASA's entire complaint instead of dismissing only those portions of the complaint that sought relief barred by Eleventh Amendment sovereign immunity—i.e. money damages and other retrospective relief. Had the district court allowed the ASA to amend its

---

[3] We previously have noted that, "[t]he *Young* doctrine is premised on the fiction that such a suit [against an official-capacity defendant] is not an action against a 'State' and is therefore not subject to the sovereign immunity bar." *Agua Caliente*, 223 F.3d at 1045.

complaint to conform to the *Young* doctrine, as it requested, sovereign immunity would not have barred the ASA's suit. Because the *Young* doctrine provides that the ASA's claims, when properly crafted, would not violate the Eleventh Amendment, the district court had subject matter jurisdiction.

## IV.

The district court held in the alternative that amendment would be futile because the ASA's complaint failed to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). As we discuss further, the district court erred when it dismissed the suit with prejudice on futility grounds.

## A.

In evaluating whether the ASA's complaint stated a claim upon which relief could be granted, the district court focused on the fee-collection agreement between the parties, as well as ABOR's policies regarding collection of the ASA fee. The district court analogized collection of the ASA fee to cases involving payroll deductions of public-employee union dues. Viewing ASA's complaint in this manner, the court rejected the ASA's argument that its cause of action sounded in First Amendment retaliation. The district court instead construed the ASA's claim as challenging ABOR's decision to refrain from facilitating the ASA's exercise of its free speech rights.

The district court relied on two cases to support its interpretation of the ASA's complaint. First, it turned to *Davenport v. Washington Education Association*, 551 U.S. 177 (2007), noting that there the Supreme Court upheld a state statute that required public-sector unions to obtain

affirmative consent from nonmembers before expending nonmembers' agency-shop fees on election-related activities. *Id.* at 184. *Davenport* held that the statute did not restrict speech, but rather, allowed the state to decline to facilitate a union's political speech. *Id.* at 187–90. That is, a union could theoretically still engage in political speech activities and receive dues, but the state had no obligation to allow the union to piggyback on the state's payroll deduction system to obtain those dues.

Next, the court pointed to *Ysura v. Pocatello Education Association*, 555 U.S. 353 (2009), where the Supreme Court upheld a statute prohibiting payroll deductions for public-employee union dues used for political activities ("political fees"). Applying the more lenient standard of review for claims related to a state's facilitation of speech, the *Ysura* Court held that public-employee unions had no affirmative right to receive money for expressive activities through government payroll mechanisms. *Id.* at 355.

The district court reasoned that the ASA was similar to a public-employee union that sought to collect dues through a payroll deduction system. The district court considered ABOR's modification of its fee-collection policies similar to a statutory change in union dues collection; therefore, ABOR "ha[d] no obligation to continue to subsidize [ASA's] speech." Although the district court briefly acknowledged that the ASA had attempted to allege a First Amendment retaliation claim in which ABOR's motive would be a necessary element of the claim, the district court held that the policy change, like the passage of a statute, was a non-content-based, neutral, procedural modification. It reasoned that in cases involving neutral changes to policy, an inquiry into ABOR's motive would be irrelevant because, when the

allegation of improper motive was excluded, the policy modifications would have been constitutional.

The district court also rejected the ASA's argument that ABOR had retaliated against the ASA for its political speech by terminating a valuable government benefit.  Drawing on *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), the district court explained that a "valuable government benefit" included the termination of public employment, denial or revocation of tax exemption, and deprivation of unemployment or welfare benefits.  The court explained that ABOR's original "opt-out" policy for collecting the ASA fee was "not an equivalent benefit" to the kinds of benefits set forth in *Sindermann*.  The district court also reasoned that a benefit only qualified as a valuable government benefit if it were a "benefit available to the general public based on objective criteria."  Because ABOR did not collect fees for other student organizations or members of the public, the court reasoned that the ASA-fee collection was a voluntary benefit, which it could revoke at any time.  Viewed in this context, the court concluded that changing a policy from an opt-out to an opt-in model was "not the type of benefit deprivation that could support a First Amendment retaliation case."

The ASA argues that the district court misconstrued its complaint, as the only claim it seeks to pursue is one for First Amendment retaliation and not to compel the facilitation of speech.  We thus turn to whether the ASA's complaint states a plausible claim for retaliation in violation of the First Amendment.  We conclude below that it does.

## B.

A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would "chill a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech. *O'Brien*, 2016 WL 1382240, at \*11 (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006); *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)); *see also Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). Further, to prevail on such a claim, a plaintiff need only show that the defendant "intended to interfere" with the plaintiff's First Amendment rights and that it suffered some injury as a result; the plaintiff is not required to demonstrate that its speech was actually suppressed or inhibited. *Mendocino Envt'l Ctr.*, 192 F.3d at 1300.

## 1.

"The First Amendment affords the broadest protection to . . . political expression in order 'to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). A person's First

Amendment free speech right is at its highest when that person engages in "core political speech," which includes issue-based advocacy related to ballot initiatives. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, 351 (1995).

In the context of ballot-initiative advocacy, the Supreme Court has recognized a wide array of protected speech activities. Those activities include, and are not limited to, donating money to an initiative campaign, *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 775 (1978); circulating a petition and gathering signatures to qualify an initiative for the ballot, *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988); *Buckley v. Am. Con. Law Found., Inc.*, 525 U.S. 182, 186–87 (1999); and electioneering and distributing elections material, *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 677 (1992). Both natural persons and corporations enjoy those free-speech rights. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 355 (2010); *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 480 (2007); *Bellotti*, 435 U.S. at 777.

According to the complaint's factual allegations, the ASA engaged in multiple forms of constitutionally protected, core political speech. Those activities included co-drafting Proposition 204's text and statement of support in the State's official voter's guide, gathering petition signatures to qualify Proposition 204 for the ballot, donating to the proposition's campaign, producing and circulating electioneering communications and materials, and engaging in face-to-face advocacy with prospective voters. Thus, the ASA adequately alleged that it had engaged in the kinds of core political speech that trigger the First Amendment's highest levels of protection.

**2.**

The ASA additionally alleged that ABOR's retaliatory policy modification chilled its exercise of its free speech rights by terminating a valuable government benefit. Specifically, the ASA alleged that ABOR engaged in conduct that would chill a person of ordinary firmness from engaging in protected First Amendment speech when it suspended collection and remittance of the ASA fee and modified its fee-collection policies. The ASA also alleged that it suffered and continues to suffer direct harm that has limited its ability to participate in the kind of core political speech activities that it undertook prior to ABOR's alleged retaliation.

Both the Supreme Court and we have recognized a wide variety of conduct that impermissibly interferes with speech. For example, the government may chill speech by threatening or causing pecuniary harm, *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996); withholding a license, right, or benefit, *Baird v. State Bar of Ariz.*, 401 U.S. 1, 7 (1971); prohibiting the solicitation of charitable donations, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980); detaining or intercepting mail, *Blount v. Rizzi*, 400 U.S. 410, 417–18 (1971); or conducting covert surveillance of church services, *The Presbyterian Church v. United States*, 870 F.2d 518, 522–23 (9th Cir. 1989). Importantly, the test for determining whether the alleged retaliatory conduct chills free speech is objective; it asks whether the retaliatory acts "'would lead ordinary student[s] . . . in the plaintiffs' position' to refrain from protected speech." *O'Brien*, 2016 WL 1382240, at *11 (quoting *Pinard*, 467 F.3d at 770).

The ASA also alleged that ABOR's retaliatory acts directly undermined the ASA's ability to pursue its core purpose—to advocate for policies that improve the affordability, accessibility, and quality of public higher education. The ASA's complaint asserts that ABOR's conduct is more than a threat to encumber speech; the Board's actions have actually limited the ASA's speech by eliminating the ASA's primary source of income.

Although the district court viewed the ASA's claim as seeking to compel ABOR to facilitate speech, it briefly addressed the ASA's allegations of retaliation and concluded that the collection and remittance of the ASA fee did not constitute a valuable government benefit for the purposes of a First Amendment retaliation claim. The district court cast ABOR's fee collection as a "simply voluntary" activity that it could terminate at any time, and consequently, the court held that the ASA had not demonstrated that ABOR had an affirmative obligation to collect the ASA fee. As discussed below, the district court erred when it restricted the category of activities that constitute a valuable government benefit. It additionally erred when it failed to evaluate ABOR's suspension of those activities as a deprivation of a valuable government benefit.

Significantly, the ASA and ABOR's dispute is more than a disagreement between similarly situated political rivals. ABOR represents the State's most powerful authority in determining the policies, delivery, governance, management, and accessibility of Arizona's public higher education. The ASA is composed entirely of public university students, and it represents the collective voice of those students. The disparity in power between ABOR and Arizona's public university students is vast. According to the ASA, ABOR

leveraged that power to punish the ASA for participating in core political speech and, further, to attempt to bankrupt the ASA to prevent it from exercising its free-speech rights in the future.  Given the inherent power asymmetry between the Board and students, as well as the severe impact of ABOR's actions on the ASA, it is highly likely that the Board's alleged retaliation would chill and discourage a student or student organization of similar fortitude and conviction from exercising its free-speech rights.

As we have noted, "Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *O'Brien*, 2016 WL 1382240, at *10.  A state, division of the state, or state official may not retaliate against a person by depriving him of a valuable government benefit that that person previously enjoyed, conditioning receipt of a government benefit on a promise to limit speech, or refusing to grant a benefit on the basis of speech.  Those limitations apply even if the aggrieved party has no independent or affirmative right to that government benefit:

> [E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely.  It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. . . . Such interference with constitutional rights is impermissible.

*Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 903 (9th Cir. 2007) (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990)); *see also Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

In considering whether a benefit constitutes a valuable government benefit, we ask whether the opportunity to access the benefit or privilege at issue is the type of benefit that can trigger First Amendment scrutiny, not whether the benefit is available to the public. *See Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992). Importantly, the deprivation of a valuable government benefit for the purpose of discouraging the exercise of First Amendment rights "need not be particularly great in order to find that rights have been violated." *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 359 n.13 (1976)). Although the "prototypical" First Amendment retaliation case arises from the termination of public employment, *see Blair*, 608 F.3d at 544, we have recognized claims for First Amendment retaliation in several non-employment contexts.

"The injury to position or privilege necessary to activate the First Amendment . . . need not rise to the level of lost employment. Retaliatory actions with less momentous consequences . . . are equally egregious in the eyes of the Constitution." *Hyland*, 972 F.2d at 11135. Indeed, we have held that a plaintiff was deprived of a valuable government benefit when a state rejected an application to exhibit commercial and noncommercial speech, *Outdoor Media Group*, 506 F.3d at 906; terminated a prisoner from his prison job, *Vignolo*, 120 F.3d at 1078; suspended a previously authorized environmental use permits, *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989); revoked a business license, *CarePartners LLC v. Lashway*, 545 F.3d

867, 871, 877–78 (9th Cir. 2008); or removed a volunteer from his unpaid position, *Hyland*, 972 F.2d at 1135.

ABOR had no affirmative obligation to collect or remit the ASA fee, but having done so for fifteen years at no cost, ABOR could not deprive the ASA of the benefit of its fee collection and remittance services in retaliation for the ASA's exercise of its First Amendment rights.   ABOR's fee collection falls within the range of government benefits we have previously recognized as sufficiently valuable to give rise to a retaliation claim.  Indeed, the ASA alleged that its student fees were allocated to its efforts to exercise core political speech.  As we have previously held in other First Amendment retaliation cases, and as we now hold in this case, the collection and remittance of funds is a valuable government benefit, and a change in policy undertaken for retaliatory purposes that results in the deprivation of those funds implicates the First Amendment.

**3.**

A plaintiff may establish motive using direct or circumstantial evidence.  *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002) (citing *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002)).   In cases involving First Amendment retaliation in the employment context, we have held that a plaintiff may rely on evidence of temporal proximity between the protected activity and alleged retaliatory conduct to demonstrate that the defendant's purported reasons for its conduct are pretextual or false.  *Id.* at 980.  At the pleading stage, a plaintiff adequately asserts First Amendment retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to

the suppressive conduct. *O'Brien*, 2016 WL 1382240, at \*11, \*13.

The ASA offers several plausible factual allegations to support its contention that ABOR changed its policies to retaliate against the ASA for its support of Proposition 204. As direct evidence of ABOR's retaliatory intent, the ASA alleges that several Regents publicly acknowledged that the Board's decision to suspend collection of the ASA student fee was "political in nature and resulted from ASA's advocacy in support of Proposition 204." As circumstantial evidence of ABOR's retaliatory intent, the ASA notes that "[s]everal members of [ABOR] criticized ASA for supporting Proposition 204," and that the Board's allegedly retaliatory conduct was temporally proximate to ASA's exercise of its free-speech rights. Taken together, those allegations sufficiently identify ABOR's retaliatory intent and the nexus between the Board's intent and its later suspension and amendment of its policies.

The ASA adequately and plainly pleaded a plausible claim for First Amendment retaliation on the basis that ABOR deprived it of a valuable government benefit. We therefore reverse the district court's dismissal of the ASA's retaliation claim and remand for further proceedings consistent with this opinion.

**V.**

When justice requires, a district court should "freely give leave" to amend a complaint. Fed. R. Civ. P. 15(a)(2). A district court's decision to deny a party leave to amend its complaint is reviewed for an abuse of discretion. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th

Cir. 2011).  Dismissal of a complaint without leave to amend is only proper when, upon de novo review, it is clear that the complaint could not be saved by any amendment. *Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).  As discussed above, the amendment of the ASA's complaint would not have been futile.

The district court abused its discretion when it failed to grant the ASA leave to amend its complaint to conform with the requirements of *Young*.  On remand, the district court shall afford the ASA a reasonable opportunity to file an amended complaint.

*          *          *

For the reasons set forth above, we affirm in part and reverse in part the dismissal of the ASA's complaint, and we remand for further proceedings consistent with this opinion.

The ASA shall recover its costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**