**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY OF SAN JUAN CAPISTRANO, a California municipal corporation, *Plaintiff-Appellant*, <br><br> v. <br><br> CALIFORNIA PUBLIC UTILITIES COMMISSION, a California state agency, <br> *Defendant-Appellee.* | No. 17-56693 <br><br> D.C. No. 8:17-cv-01096-AG-E <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted March 8, 2019
Pasadena, California

Filed September 11, 2019

Before: Andrew J. Kleinfeld, Jacqueline H. Nguyen,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson;
Concurrence by Judge R. Nelson

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's dismissal of claims for lack of standing in an action brought by the City of San Juan Capistrano asserting that the California Public Utility Commission's approval of an electrical grid project violated the City's due process rights.

Citing *City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980), and its progeny, the panel noted that this Circuit has consistently held that political subdivisions lack standing to challenge state law on constitutional grounds in federal court. Accordingly, the panel held that in this case, the City could not challenge the Commission's decision on due process grounds in federal court. The panel rejected the proposition that *South Lake Tahoe* bars only facial challenges to a statute or regulation. The panel held that *South Lake Tahoe* and this Circuit's later cases relied only on the identity of the parties, not the procedural context in which those claims were raised.

The panel separately held that sovereign immunity barred the City's claims because the Commission is an arm of the State of California. The panel held that the City waived its right to amend the complaint to add a commissioner because the City never asked the district court for such relief and nothing in the City's district court filings

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

could be construed as a definite request for leave to add a new party.

Concurring, Judge R. Nelson wrote separately to highlight the potential, in the appropriate case, to revisit the court's per se rule that a political subdivision lacks standing to challenge state law on constitutional grounds in federal court.

## COUNSEL

Michael J. Aguirre (argued) and Maria C. Severson, Aguirre & Severson LLP, San Diego, California, for Plaintiff-Appellant.

Christofer Charles Nolan (argued), Arocles Aguilar, Jonathan C. Koltz, and Marcelo Poirier, California Public Utilities Commission, San Francisco, California, for Defendant-Appellee.

Peder K. Batalden (argued), Mitchell C. Tilner, and Bradley S. Pauley, Horvitz & Levy LLP, Burbank, California; Michael J. Perez and Jeffrey A. Feasby, Perez Vaughn & Feasby Inc., San Diego, California; for Amicus Curiae San Diego Gas & Electric Company.

## OPINION

R. NELSON, Circuit Judge:

The City of San Juan Capistrano contends the California Public Utility Commission's approval of an electrical grid project violates the City's due process rights. Following *City of South Lake Tahoe v. California Tahoe Regional Planning Agency* and its progeny, we hold the City cannot challenge the Commission's decision on due process grounds in federal court. 625 F.2d 231, 233 (9th Cir. 1980). Moreover, the City's claims are barred by Eleventh Amendment sovereign immunity. We therefore affirm.

## I

The City of San Juan Capistrano ("the City") alleges the California Public Utility Commission ("the Commission") violated due process when it approved San Diego Gas & Electric's ("the Utility") project to replace a transmission line and upgrade a substation on property the Utility owns within the City. The City opposed the project "as a duly admitted party" in a Commission hearing. After the hearing, the Commission administrative law judge recommended approving an alternate project with less environmental impact. But the assigned commissioner—after ex parte meetings with the Utility—recommended approval of the original project. The Commission agreed.

The Commission denied the City's application for rehearing. *See* Cal. Pub. Util. Code § 1733 (denial by inaction). The City did not challenge the Commission's decision in state court. *Id.* § 1756 (judicial review of Commission decisions).

Instead, the City sued the Commission in federal court alleging the ex parte meetings led the Commission to reject the administrative law judge's recommendation.  The City argued that by not giving "due consideration" to alternative projects as required by California environmental law, the Commission deprived the City of liberty and property interests over its environmental integrity, cultural integrity, and development, along with its procedural right to a fair hearing.  The City sought to enjoin the Commission from mandating the project, a declaration that the Commission's approval order is not enforceable against the City, and attorneys' fees.  The district court dismissed the suit with prejudice, holding that the City, as a political subdivision, lacked standing to sue the Commission and amendment would be futile.  *See South Lake Tahoe*, 625 F.2d at 233.

Plaintiff's standing and Defendant's sovereign immunity are questions of law, which we review de novo.  *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 765–66 (9th Cir. 2018).

## II

Starting with *South Lake Tahoe*, 625 F.2d at 233, we have consistently held that political subdivisions lack standing to challenge state law on constitutional grounds in federal court.[1]  *South Lake Tahoe* offered no independent

---

[1] We have held that a city, an airport authority, a health district, and a school district all lack standing to sue a planning authority, a city, and various state agency officials.  *See Okanogan Sch. Dist. #105 v. Superintendent of Pub. Instruction for Wash.*, 291 F.3d 1161, 1165–66 (9th Cir. 2002); *Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1106–09 (9th Cir. 1999); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1362–64 (9th Cir. 1998); *South Lake Tahoe*, 625 F.2d at 233.  Some of the failed claims were premised on allegations that state statutes, regulations, or procedures violated the

reasoning for its per se standing rule.  But it cited Supreme Court and Second Circuit decisions that rejected cities' constitutional challenges to state law, characterizing political subdivisions as "creature[s]" and states as their "creators."  *South Lake Tahoe*, 625 F.2d at 233–34 (citing *Williams v. Mayor & City Council of Baltimore*, 289 U.S. 36, 40 (1933); *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923); *City of Newark v. New Jersey*, 262 U.S. 192, 196 (1923); *City of New York v. Richardson*, 473 F.2d 923, 929 (2d Cir. 1973); *Aguayo v. Richardson*, 473 F.2d 1090, 1100–01 (2d Cir. 1973)).**[2]**  Here, *South Lake Tahoe*, and the

---

suing subdivision's due process rights.  *Palomar*, 180 F.3d at 1106–09; *Burbank*, 136 F.3d at 1362–64.  Other failed claims were based on allegations that a state statute or regulation conflicted with a federal statute, thereby violating the Supremacy Clause.  *Okanogan*, 291 F.3d at 1165–66; *Palomar*, 180 F.3d at 1107; *Burbank*, 136 F.3d at 1363–64.

**[2]** Other circuits have applied the Supreme Court's decisions in *Williams*, *Trenton*, and *Newark* differently, rejecting the proposition that these precedents announced a per se rule of standing and instead holding that cities and other political subdivisions, as a substantive matter, lack certain constitutional rights.  The Fifth Circuit held that *Williams* and *Trenton* did not bar a school district from claiming a state policy conflicted with a federal school meal program.  It concluded that the Constitution alone does not interfere with the state-subdivision relationship, but that, under the Supremacy Clause, a federal statute might give a political subdivision a cause of action.  *Rogers v. Brockette*, 588 F.2d 1057, 1068–69 (5th Cir. 1979); *see also Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628 (10th Cir. 1998) ("*Williams* and *Trenton* stand only for the limited proposition that a municipality may not bring a constitutional challenge against its creating state when the constitutional provision that supplies the basis for the complaint was written to protect individual rights, as opposed to collective or structural rights.").  The Second Circuit, citing "unique federalism concerns," recently adopted the reasoning of *Rogers* to allow political subdivision challenges to state law under the Supremacy Clause.  *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 72–73 (2d Cir. 2019).  It distinguished its holdings in *Aguayo*, 473 F.2d at 1100, and *Richardson*,

decisions in *Burbank*, *Palomar*, and *Okanogan* applying it, control as law of the circuit. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.").

Perhaps recognizing its uphill battle, the City characterizes *South Lake Tahoe* as a limited rule that bars challenges to the validity of statutes or regulations but does not bar the City's challenge to the Commission's "conduct in an administrative proceeding." It notes that "facial" challenges to statutes are generally disfavored and asserts that *Trenton*, *Williams*, *South Lake Tahoe*, *Burbank*, and *Palomar* were all facial challenges to a statute or regulation —barred because such challenges interfere with states' internal political organization.

We reject the proposition that *South Lake Tahoe* bars only facial challenges to a statute or regulation. *South Lake Tahoe* and our later cases do not suggest that the standing analysis was dependent on a facial challenge to a statute or regulation rather than an administrative decision. Instead, our cases have relied only on the identity of the parties, not the procedural context in which those claims are raised. *See, e.g.*, *Palomar*, 180 F.3d at 1107 ("We must determine

473 F.2d at 929—both cited by *South Lake Tahoe*—as specific to Fourteenth Amendment claims, which present "different" considerations. *Tong*, 930 F.3d at 73 n.7. The Sixth, Seventh, and Eleventh Circuits have interpreted *Williams*, *Trenton*, and *Newark* to hold that political subdivisions have no Fourteenth Amendment rights. *S. Macomb Disposal Auth. v. Township of Washington*, 790 F.2d 500, 504–05 (6th Cir. 1986); *United States v. Alabama*, 791 F.2d 1450, 1455 (11th Cir. 1986); *Vill. of Arlington Heights v. Reg'l Transp. Auth.*, 653 F.2d 1149, 1152–53 (7th Cir. 1981).

(1) whether [plaintiff] is a 'political subdivision' of the State of California, and if so, (2) whether, by suing the defendants named in this action, [plaintiff] brings this action against the state.").

We therefore conclude that the City lacks standing to challenge the Commission's decision on due process grounds in federal court.

## III

We separately hold that sovereign immunity bars the City's claims because the Commission is an arm of the State of California. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see Air Transp. Ass'n of Am. v. Pub. Utils. Comm'n of Cal.*, 833 F.2d 200, 203–04 (9th Cir. 1987) (holding the Commission, specifically, is entitled to sovereign immunity). The Eleventh Amendment bars claims against a state—including its agencies—in federal court. *Pennhurst*, 465 U.S. at 97–100.

The City concedes on appeal the Commission is entitled to sovereign immunity. But it argues for leave to amend its complaint to add claims against a commissioner under *Ex parte Young*, 209 U.S. 123 (1908), which allows suits seeking "prospective relief" against a state official who has a fairly direct connection to an "ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. at 155–56). *Arizona Students' Association* suggests the City should generally be allowed leave to amend its complaint to add an individual official as a party, assuming claims otherwise satisfy *Ex parte Young*'s requirements. *Id.* at 871.

Below, however, the City argued that the Eleventh Amendment did not apply to its claims against the

Commission, only briefly suggesting the City *could* amend its complaint consistent with *Ex parte Young* if it were wrong. The City never asked for leave to add a commissioner as a party, only to "add facts developed in [its] analysis and investigation" related to the ex parte meetings. Nothing in the City's district court filings can be construed as a definite request for leave to add a new party. Indeed, at argument before us, the City conceded it never asked the district court for such relief, and only requested such relief in its Reply Brief.

The City has therefore waived its right to amend. *See Okwu v. McKim*, 682 F.3d 841, 846 n.4 (9th Cir. 2012) ("[Plaintiff] has waived the argument that she should be allowed to amend her complaint to re-style some of her § 1983 claims . . . under the *Ex Parte Young* exception . . . . She did not make that argument to the district court or in either of her briefs on appeal."); *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding sovereign immunity issue forfeited on appeal where defendant failed to re-assert a claim for injunctive relief already in her complaint in response to the state's motion to dismiss).

## IV

The district court properly dismissed the City's claims because the City lacks standing and the claims are barred by the Eleventh Amendment.

**AFFIRMED**.

R. NELSON, Circuit Judge, concurring:

Today, the panel reaffirms the court's established per se rule that a political subdivision lacks standing to challenge state law on constitutional grounds in federal court. I write separately to highlight the potential, in the appropriate case, to revisit the court's per se rule in light of intervening caselaw from other circuit courts and the Supreme Court.

Nearly 40 years ago, we adopted a per se "standing" bar on a political subdivision challenging state law in federal court. *City of South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*, 625 F.2d 231, 233 (9th Cir. 1980) (analyzing "whether the City . . . ha[s] standing to bring this case"). We have not deviated from that per se bar since. *See supra* at 5 n.1. When *South Lake Tahoe* was decided, this standing terminology made some sense. Indeed, one of the first cases to address this issue held that a city's officials were "without standing to invoke the protection of the Federal Constitution." *Williams v. Mayor and City Council of Balt.*, 289 U.S. 36, 47 (1933). Then, in *Coleman v. Miller*, the Supreme Court branded the result of *Williams* and related cases as a matter of "standing." *See* 307 U.S. 433, 441 (1939).

Since these cases, however, the meaning of "standing" has changed. When *Williams* and *Coleman* were decided, "standing was not seen as a preliminary or threshold question" as it is today. *Rogers v. Brockette*, 588 F.2d 1057, 1070 (5th Cir. 1979). Instead, "[a] party had standing or a 'right to sue' if it was correct in its claim on the merits that the statutory or constitutional provision in question protected its interests[.]" *Id.* That is why the *Williams* line of cases do not mention the elements we now associate with Article III standing, like injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992);

*see also Indian Oasis–Baboquivari Unified Sch. Dist. v. Kirk* (*Indian Oasis I*), 91 F.3d 1240, 1246, 1250 (9th Cir. 1996) (Reinhardt, J., dissenting) ("[A] per se bar on standing can[not] be reconciled with *Lujan* or literally dozens of other modern standing cases."), *vacated for reh'g en banc and dismissed on other grounds*, 109 F.3d 634 (9th Cir. 1997) (en banc).

Despite this history, we have imported "standing" from *Williams* and *Coleman* and consistently used the term in a string of cases as if it holds our modern understanding of the word—that of a jurisdictional prerequisite that must be satisfied prior to reviewing a claim on the merits. In *South Lake Tahoe*, for example, we held that the question of political subdivision standing went to our subject-matter jurisdiction. 625 F.2d at 233. Then, in *Palomar Pomerado Health System v. Belshe*—decided after *Lujan*—we reiterated the doctrine as a "jurisdictional issue." 180 F.3d 1104, 1107 (9th Cir. 1999).

Since we adopted our per se standing rule, however, other circuits have adopted different theories in addressing political subdivision's right to sue a state in federal court. The Tenth Circuit, for example, has treated it as a standing question, barring due process claims, but not Supremacy Clause claims. *See Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628–30 (10th Cir. 1998). The Second and Fifth Circuits, by contrast, have not treated it as a standing issue, but have also barred due process claims and allowed Supremacy Clause challenges. *E.g.*, *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 72–73 (2d Cir. 2019) (allowing a political subdivision to pursue a Supremacy Clause claim); *Rogers*, 588 F.2d at 1069–71 (same); *see also Star-Kist Foods, Inc. v. County of Los Angeles*, 42 Cal.3d 1, 6–10 (1986) (rejecting *South Lake Tahoe*'s per se "standing"

bar and allowing a claim under the Commerce Clause). And the Second, Fifth, and Tenth Circuit approaches remain faithful to the driving force behind our rule—the unique relationship between state subdivisions and their creating states. *E.g.*, *Rogers*, 588 F.2d at 1070.

The Supreme Court has barred due process and contract clause claims by political subdivisions against states in federal court. *City of Trenton v. State of New Jersey*, 262 U.S. 182, 188 (1923) ("The power of the State, unrestrained by the contract clause or the Fourteenth Amendment, over the rights and property of cities held and used for 'governmental purposes' cannot be questioned.") (citation omitted). But the Supreme Court has not yet addressed a claim under the Supremacy Clause and thus, the split between our court and our sister courts has not been resolved. The Supreme Court recently suggested that all claims by political subdivisions are barred, noting that "[p]olitical subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009). The Court then compared "political subdivision[s]" to "private corporation[s]," noting that a corporation "enjoys constitutional protections" while a political subdivision "has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator." *Id.* at 362–63 (internal quotations omitted).

Given the differing theories advanced by other courts and the significant change in the meaning of "standing" since we decided *South Lake Tahoe*, it is worth this court's consideration to revisit our rationale for our per se rule (which would have to occur en banc) to decide whether we remain on the correct path. At least three of our colleagues

have previously suggested such a course. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1365 (9th Cir. 1998) (Kozinksi, J., concurring); *Palomar*, 180 F.3d at 1109, 1111 (Hawkins, J., concurring); *Indian Oasis I*, 91 F.3d at 1246, 1250 (Reinhardt, J., dissenting). To be clear, this case does not warrant en banc review because all circuit courts and the Supreme Court bar due process claims. *Trenton*, 262 U.S. at 188; *see also supra* at 6 n.2.

Consistent with the Supreme Court's recent direction in *Ysursa*, it may well be that our per se rule, even as an outlier among the circuit courts, is the correct one. But the underlying rationale still matters. Whether the rule is properly understood as a per se bar on "standing" may not be just a theoretical discussion but could have different implications based on different constitutional provisions. An inquiry informed by *the type* of constitutional claim at issue and how that claim affects the state-political subdivision relationship may provide a basis for allowing suits based on certain constitutional provisions while disallowing others. *Branson*, 161 F.3d at 628–29. But our current per se standing rule, while providing the benefit of a clear bright line, does not permit full consideration of important constitutional questions in future cases. Therefore, in the appropriate case, we should revisit en banc whether our per se standing bar is correct.