**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 20-2754 & 20-2755
_____

OCEAN COUNTY BOARD OF COMMISSIONERS*;
COUNTY OF OCEAN; CAPE MAY COUNTY SHERIFF;
COUNTY OF CAPE MAY

v.

ATTORNEY GENERAL OF THE STATE OF NEW
JERSEY; STATE OF NEW JERSEY OFFICE OF
ATTORNEY GENERAL; DEPARTMENT OF LAW AND
PUBLIC SAFETY, DIVISION OF CRIMINAL JUSTICE

Ocean County Board of Commissioners*; County of Ocean,
Appellants in 20-2754

Cape May County Sheriff; County of Cape May,
Appellants in 20-2755

*(Amended 1/29/21)
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court Nos. 3-19-cv-18083; 3-19-cv-18929
District Judge: The Honorable Freda L. Wolfson

_____

Argued on June 3, 2021

Before: AMBRO, HARDIMAN, and PHIPPS, *Circuit Judges*

(Filed: August 9, 2021)

John C. Sahradnik
Mathew B. Thompson **[Argued]**
Berry Sahradnik Kotzas & Benson
212 Hooper Ave.
P.O. Box 757
Toms River, NJ 08754
 *Counsel for County of Ocean, Ocean County Board of Commissioners, Appellants*

Jeffrey R. Lindsay **[Argued]**
Cape May County Department of Law
4 Moore Road, DN 104
Cape May Court House, NJ 08210

Michael L. Testa, Jr.
Testa Heck Testa & White P.A.
424 W. Landis Ave.
Vineland, NJ 08360
 *Counsel for County of Cape May, Cape May County Sheriff, Appellants*

Jeremy M. Feigenbaum **[Argued]**
Michael R. Sarno
Daniel M. Vannella

Office of Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
    *Counsel for Appellees*

Lawrence J. Joseph
Suite 700-1A
1250 Connecticut Ave., N.W.
Washington, D.C. 20036
    *Attorney for Amicus Curiae Immigration Reform Law Institute in Support of Appellants County of Cape May, Cape May County Sheriff*

Paul J. Fishman
Arnold & Porter Kaye Scholer LLP
One Gateway Center, Suite 1025
Newark, NJ 07102
    *Attorney for Amicus Curiae Constitutional, Immigration, and Criminal Law Scholars in Support of Appellees*

Farrin R. Anello
American Civil Liberties Union of New Jersey Foundation
P.O. Box 32159
Newark, NJ 07102
    *Attorney for Amicus Curiae 47 Community Organizations in Support of Appellees*

Jamison Davies
New York City Law Department
100 Church St.
New York, NY 10007

*Attorney for Amicus Curiae 13 Local Governments in Support of Appellees*

Mary B. McCord
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave. NW
Washington, D.C. 20001
     *Attorney for Amicus Curiae Current and Former Prosecutors and Law Enforcement Leaders and Former Attorneys General and Department of Justice Officials in Support of Appellees*

Loren L. AliKhan
Office of Attorney General of District of Columbia
400 6th St. NW
Suite 8100
Washington, D.C. 20001
     *Attorney for Amicus Curiae District of Columbia, California, Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Mexico, New York, Oregon, Rhode Island, Virginia, Vermont, and Washington in Support of Appellees*

————————————

OPINION OF THE COURT

————————————

HARDIMAN, *Circuit Judge.*

This appeal—which involves New Jersey's recent directive to limit the ability of state and local law enforcement

4

officers to cooperate with federal immigration authorities—implicates important questions of federalism. Two New Jersey counties, a sheriff, and the oversight board of a county jail (collectively, Appellants), sued to invalidate and enjoin the directive. Appellants claim it is preempted by federal law. The District Court disagreed and dismissed their complaints. Because we agree with the District Court that federal law does not preempt the directive, we will affirm.

I

In November 2018, New Jersey Attorney General Gurbir Grewal issued Law Enforcement Directive 2018-6, also known as the Immigrant Trust Directive. *See* Dist. Ct. Dkt. No. 14-5. It was revised and reissued, with minimal substantive changes, the next year. Concluding "that individuals are less likely to report a crime if they fear that the responding officer will turn them over to immigration authorities," the Directive amended state rules to restrict interactions between state and local law enforcement and federal immigration officers. *Id.* at 2–3. As relevant here, § II-B of the Directive barred counties and local law enforcement from assisting federal immigration authorities in these ways:

> 2. Providing any non-public personally identifying information regarding any individual.
>
> 3. Providing access to any state, county, or local law enforcement equipment, office space, database, or property not available to the general public.

5

4. Providing access to a detained individual for an interview, unless the detainee signs a written consent form . . . .

5. Providing notice of a detained individual's upcoming release from custody . . . .

*Id.* at 5 (footnote omitted). Section II-B defined "[n]on-public personally identifying information" to include, among other things, "a social security number" and a "driver's license number." *Id.* at 5 n.1. The Directive also prohibited local law enforcement agencies and officials from entering "any agreement to exercise federal immigration authority pursuant to Section 287(g) of the Immigration and Nationality Act." *Id.* at 7 (§ III-A). And it required local law enforcement to "notify a detained individual" when federal immigration authorities requested to interview the person, to have the person detained past his or her release date, or to be informed of the person's upcoming release. *Id.* at 9 (§ VI-A). The Directive provided several exceptions to the limitations just described. It instructed that "[n]othing in Sections II.A or II.B shall be construed to restrict . . . state, county, or local law enforcement" from "[c]omplying with all applicable federal, state, and local laws," including 8 U.S.C. §§ 1373 and 1644. *Id.* at 6-7 (§ II-C).

In September 2019, the County of Ocean and its Board of Commissioners (collectively, the Ocean County Plaintiffs) sued in the District Court seeking a declaratory judgment that the Directive violated the United States Constitution and New Jersey law. The Ocean County Plaintiffs argued the Directive was preempted by two federal statutes: 8 U.S.C. §§ 1373 and 1644. Section 1373 bars government officials and entities from

"prohibit[ing], or in any way restrict[ing], any government entity or official from sending to, or receiving from" federal immigration authorities "information regarding the citizenship or immigration status . . . of any individual." Section 1644 contains similar language: "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from" federal immigration authorities "information regarding the immigration status . . . of an alien in the United States." The Ocean County Plaintiffs argued the Directive's bar on sharing personally identifying information—such as social security and drivers' license numbers—conflicted with these federal laws. And that purported conflict rendered the Directive invalid under the Supremacy Clause of the Constitution.

The next month, the County of Cape May and its sheriff, Robert Nolan (collectively, the Cape May County Plaintiffs), filed suit advancing similar challenges to the Directive. The Cape May Plaintiffs argued broadly that §§ 1373 and 1644 preempted the Directive, and that the Directive's prohibition on § 287(g) agreements unlawfully impeded the enforcement of federal immigration law.

In November 2019, the District Court consolidated the two cases. Attorney General Grewal moved to dismiss. In July 2020, the District Court granted the motion as to the federal claims and declined to exercise supplemental jurisdiction over the state claims.[1] This timely appeal followed.

---

[1] The District Court dismissed the state law claims without prejudice, so the Ocean County Plaintiffs and the Cape May Plaintiffs are pursuing those claims in New Jersey state court.

II

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the District Court's order of dismissal. *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021).

A

Before reaching the merits, we must address two threshold issues raised by the Attorney General.[2] Both stem from Appellants' political subdivision status. First, the Attorney General argues a state political subdivision—like a county—lacks standing to bring constitutional claims in federal court against the state that created it. Second, even if Article III standing exists, "as a categorical rule of constitutional law," such subdivision suits are barred. A.G. Br. 20. We disagree.

The Attorney General correctly notes that, in a line of cases dating back centuries, the Supreme Court rejected the idea that political subdivisions could pursue constitutional claims against their creator states in federal court. *See, e.g.*, *Hunter v. Pittsburgh*, 207 U.S. 161, 179 (1907) (in relation to a political subdivision, "the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States"); *see also Williams v. Mayor & City Council of Balt.*, 289 U.S. 36, 40 (1933); *Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. (4 Wheat.) 518, 629–30 (1819).

---

[2] Attorney General Grewal resigned during this appeal.

Things changed, however, in 1960. In *Gomillion v. Lightfoot*, the Supreme Court limited the sweeping language of its earlier opinions that suggested a per se bar on political subdivision suits. 364 U.S. 339 (1960). Although the petitioners in *Gomillion* were individuals—not political subdivisions—the Court spoke broadly about the powers of a state legislature vis-à-vis its subdivisions. *Id.* at 344–45. "Legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution." *Id.* Earlier language seemingly to the contrary, the Court cautioned, "must not be applied out of context." *Id.* at 344. The "unconfined dicta" from cases like *Hunter* confirms only "that the State's authority is unrestrained *by the particular prohibitions of the Constitution considered in those cases*." *Id.* (emphasis added). Critical to this appeal, none of the early cases barring subdivision suits addressed the Supremacy Clause.

Since the Court's opinion in *Gomillion*, three of our sister courts of appeals have permitted subdivisions to sue their creating states under the Supremacy Clause. *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 73 (2d Cir. 2019) (allowing such suits as a matter of substantive law); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628–29 (10th Cir. 1998) (allowing such suits, but discussing it as a matter of standing); *Rogers v. Brockette*, 588 F.2d 1057, 1070–71 (5th Cir. 1979). One circuit court has barred such subdivision suits. *See City of San Juan Capistrano v. Cal. Pub. Utils. Comm'n*, 937 F.3d 1278, 1280–81 (9th Cir. 2019). *But see id.* at 1284 (Nelson, J., concurring) (calling for the Ninth Circuit to "revisit en banc" its per se bar).

In *Tweed*, the Second Circuit recognized the "unique federalism concerns" raised by Supremacy Clause suits as a

9

reason for allowing such claims after *Gomillion*. 930 F.3d at 73; *see also Romer*, 161 F.3d at 628–29 (political subdivisions may "assert[] the structural protections of the Supremacy Clause"); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (Kozinski, J., concurring) ("Supremacy Clause claims protect the interests of the federal government against encroachment by the states."). "If the Supremacy Clause means anything," the Second Circuit opined, "it means that a state is not free to enforce within its boundaries laws preempted by federal law." *Tweed*, 930 F.3d at 73. Political subdivision suits "invoking the Supremacy Clause are one of the main ways of ensuring that this does not occur." *Id.* We agree with the reasoning of the Second Circuit and hold that a political subdivision may sue its creator state in federal court under the Supremacy Clause.[3]

B

Having confirmed Appellants' ability to bring this suit, we turn to the merits. The Ocean County Plaintiffs contend that express, conflict, and field preemption apply to § II-B-2 of the Directive (personally identifying information provision). The Cape May County Plaintiffs, on the other hand, challenge several provisions. First, they argue § II-B-2 and §§ II-B-4, II-B-5, and VI-A (notice and consent provisions) are conflict preempted because "they impose an obstacle [to] the federal

---

[3] Our opinion in *Amato v. Wilentz*, 952 F.2d 742 (3d Cir. 1991), is not to the contrary. In *Amato*, we addressed whether a county had third-party standing to sue an executive official for alleged violations of the First Amendment. *See id.* at 754–55. Here, Appellants argue their own rights were violated and advance claims under the Supremacy Clause.

government's execution of federal immigration law." Cape May Br. 5. They also argue § II-B-2 and II-B-5 are expressly preempted by §§ 1373 and 1644.

Preemption is rooted primarily in the Supremacy Clause of the Constitution. *See* U.S. CONST. art. VI, cl. 2 (federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"). In *Murphy v. N.C.A.A.*, the Supreme Court offered guidance to lower courts presented with questions of federal preemption. 138 S. Ct. 1461 (2018). As the Court explained, three types of preemption have emerged through caselaw—express, conflict, and field—but "all of them work in the same way." *Id.* at 1480.

For a federal law to preempt state law—regardless of the type of preemption claimed—it must satisfy two requirements. First, the federal law "must represent the exercise of a power conferred on Congress by the Constitution." *Id.* at 1479. Second, because "the Constitution 'confers upon Congress the power to regulate individuals, not States,'" *id.* (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)), the federal law "must be best read as one that regulates private actors," *id.*; *see also id.* at 1481 ("[R]egardless of the language sometimes used by Congress and this Court, every form of preemption is based on a federal law that regulates the conduct of *private actors*, not the States." (emphasis added)).

The two federal laws Appellants cite in this case—§§ 1373 and 1644—cannot satisfy the second prerequisite. Section 1373 says that a "*State* . . . entity or official may not prohibit, or in any way restrict, any government entity or official" from sharing immigration information with federal

11

authorities. (Emphasis added). This is a clear prohibition on *state* action; it says nothing about private actors, so it cannot be fairly read to regulate them. *See Murphy*, 138 S. Ct. at 1481.

Section 1644 uses slightly different language: "no State or local government entity may be prohibited, or in any way restricted," from communicating immigration information to the federal government. Written in the passive voice, § 1644 does not specify *who* may not prohibit or restrict state action. But in our view, the best reading of the provision is that it does not regulate private actors. *See Murphy*, 138 S. Ct. at 1479. That's because private actors can neither "prohibit[]" state action nor "restrict[]" it. *See* § 1644. A state, on the other hand, has the power to both "prohibit[]" and "restrict[]" actions by its own subdivisions. *See id.* So we conclude that § 1644, like § 1373, regulates states, not private actors.[4]

Our conclusion that neither § 1373 nor § 1644 regulates private actors is fatal to Appellants' argument that they preempt the Directive. *Murphy*, 138 S. Ct. at 1479, 1481. A federal statute that does not regulate private actors cannot serve as a basis for preemption, so Appellants' claims must fail.[5]

———————————

[5] Because we agree with the District Court that §§ 1373 and 1644 do not preempt the Directive, we do not opine on the Attorney General's argument that §§ 1373 and 1644 violate the anticommandeering doctrine. We nevertheless acknowledge that courts addressing this issue have found one or both laws unconstitutional. *See Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 378 n.20 (D.N.J. 2020) (collecting cases).

12

\*     \*     \*

The District Court did not err when it dismissed Appellants' federal claims. Supreme Court precedent permits a political subdivision to bring Supremacy Clause-based claims against its creator state in federal court. But regardless of the wisdom of the Immigration Trust Directive, it is not preempted because 8 U.S.C. §§ 1373 and 1644 regulate only state action. We will therefore affirm the District Court's order.